261 So.2d 273 (1972)
STATE of Louisiana ex rel. TIME SAVER STORES, INC.
v.
The BOARD OF ZONING ADJUSTMENTS OF the CITY OF NEW ORLEANS et al. (Consolidated with State of Louisiana ex rel. State Street Property Owners Association of Upper State Street, Inc. v. The Board of Zoning Adjustments of the City of New Orleans, et al., No. 4721).
No. 4722.
Court of Appeal of Louisiana. Fourth Circuit.
April 18, 1972.
Rehearing Denied May 16, 1972.
Writ Refused June 22, 1972.
*274 Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, for plaintiff-appellant.
Walter M. Barnett, John F. Caraway and Jacob H. Morrison, New Orleans, for defendants-appellees.
Before REDMANN, LEMMON and STOULIG, JJ.
LEMMON, Judge.
This case involves the question of whether or not Time Saver Stores, Inc. will be permitted to continue the nonconforming use of certain portions of a building that it owns at the corner of State and Freret Streets in the City of New Orleans.
The present zoning classification of the subject property is A-Single Family District. However, the building on the property has been used since prior to the adoption of the first Comprehensive Zoning Ordinance as five separate sections or units. On the ground floor are two commercial establishments, the corner (5960 Freret Street) having long been used as a grocery store and the rear (5944 Freret Street) for other commercial purposes. Three separate apartments are upstairs. The property has therefore enjoyed a nonconforming status because of these uses.
When Time Saver purchased the property, it obtained a Use and Occupancy Permit from the City of New Orleans for the use of 5944 Freret Street for commercial purposes. Two associations of homeowners in the area opposed the continued use of this portion of the building for nonconforming purposes on the ground that the portion had become and remained vacant for a continuous period of more than six months and had thus lost its nonconforming status under the City zoning laws. The associations appealed to the Board of Zoning Adjustments and also complained in a separate appeal that two of the three apartments had also lost their nonconforming status for the same reason.
The evidence established that one of the apartments had been vacant for more than six months, and the Board sustained the appeal as to that apartment. As to the commercial use of 5944 Freret Street, the Board voted to sustain the appeal, 3 to 2, but four votes are necessary under the ordinance to overturn the decision of the Director of the Department of Permits and Safety, which therefore remained in effect.
The associations applied for a writ of certiorari to the Civil District Court under R.S. 33:4727 relative to the commercial establishment and the apartment whose nonconforming use was upheld, and Time Saver applied for a similar writ on the denial of the continued use of the other apartment.
After a trial of the merits of the two consolidated cases, the district court held that one of the apartments was entitled to retain its nonconforming status, but that the other apartment and the rear commercial portion had become and remained vacant for a continuous period of six calendar months and could no longer be used for nonconforming purposes. Time Saver has appealed. No appeal was taken by the associations from that portion of the judgment which allowed the continued nonconforming use of the one apartment.
Article XXIV, Section 2, of the Comprehensive Zoning Ordinance (Ordinance *275 18,565 C.C.S. July 3, 1953, as amended[1]) provides in pertinent part:
"No building or portion thereof or land used in whole or in part for nonconforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated. Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any non-conforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended non-conforming use shall be taken into consideration in interpreting and construing the word `vacant' as used in this Ordinance; * * *" (Emphasis supplied).
While numerous factual and legal issues are presented in this appeal and serious procedural questions are raised, the interpretation of the language of the ordinance is the key to our determination here.
Once the trial court determined as a fact that the two sections of the building in question had been vacant for six months, it held (as the statute requires, if applicable) that neither portion shall be used hereafter except in conformity with the zoning regulations. In effect, this requires the lower rear store and the upper apartment to be used henceforth only as part of a single family residence. Since it is impossible for these two portions to be used in conformity with the regulations of the single family district, the ultimate effect of this requirement is that there two sections can no longer be used at all and must therefore remain vacant and out of commerce.
In this respect we find the ordinance inadequate and inexplicit. If an ordinance means that a person cannot use his property at all, it should expressly say so. We decline to construe an ordinance to mean that an owner is prohibited altogether from using his property, in the absence of explicit language in the ordinance to that effect. Perhaps zoning ordinances could constitutionally do so, but this one by its terms does not.
We recognize that the spirit underlying zoning regulations is to restrict rather than increase nonconforming uses and to secure their eventual elimination. Nevertheless, zoning ordinances are in derogation of the rights of private ownership by restricting the use of property and must be strictly construed. The zoning ordinance presently under consideration simply does not authorize the result which the associations are seeking.
We further believe that the ordinance, when interpreted in the context in which it make most sense, does not apply to the situation present in this case. The applicability of the words "or portion thereof" is the crucial issue.
Grammatically, the statute could be construed to describe four possible situations in regard to a building:
(1) building used in whole for nonconforming purposes
(2) building used in part for nonconforming purposes
(3) portion of building used in whole for nonconforming purposes
(4) portion of building used in part for nonconforming purposes.
However, "portion * * * used in part" makes no sense, and "portion * * used in whole" is the same as "building (whole) * * * used in part". We are therefore persuaded that "used in whole or in part for nonconforming purposes" refers only to "building" (or to land, when *276 applicable) and does not refer to "portion thereof". Thus are described two situations where Section 2 is applicable.
First and most obvious, when a "building * * * used in whole * * * for nonconforming purposes * * * becomes and remains vacant" for a continuous period of six months, the "building" cannot thereafter be used except in conformity with the zoning regulations.
Second, when a "building * * * used in part * * * for nonconforming purposes * * * becomes and remains vacant" for the prescribed period, then the "portion thereof" can thereafter be used only in conformity with the zoning regulations. It is only in this second situation that the words "portion thereof" are applicable.
As to this second situation where Section 2 is applicable, we further construe "building * * * used in part * * * for nonconforming purposes" to necessarily imply that the building is also "used in part" for conforming purposes. Otherwise, the building would be used in whole for nonconforming purposes (even if some portions are vacant), in which case the "building (whole)" provisions of the statute would apply and the "portion thereof" provisions of the statute would be inapplicable.
Thus, when (as in the present case) a building is "used in whole" for separate nonconforming uses, we believe that the "portion thereof" provisions of Section 2 are inapplicable. Therefore, when one separate section of a building so used becomes vacant for six months and the other sections are continued in nonconforming use during that period, the vacant portion does not lose its nonconforming status under the ordinance.
As stated above, if Section 2 is applicable in the present case, the two portions of the building ultimately must remain vacant and out of commerce. However, the associations argue that a proper result could be obtained if we prohibit the continued use of the upstairs as three apartments but allow the use as two apartments by expansion of the remaining apartments into the vacant area. That argument overlooks the obvious fact that the disputed portion of the building is then again used for nonconforming purposes, which is specifically what is prohibited by Section 2 when it applies. Expansion of a nonconforming use into the vacant areas does not satisfy the ordinance which requires conforming use of the vacant area after the vacancy.
We also recognize that conversion from three apartments to two (or from two commercial portions to one) would constitute a less offensive nonconforming use (even though the vacant area was put back into nonconforming use), and as such would be within the general theme of zoning objectives. Nevertheless, not only is there no specific language in the ordinance justifying this interpretation, but also there is specific language prohibiting nonconforming use after a vacancy. This statute cannot therefore support such an interpretation.
The judgments of the district court are reversed, and it is now ordered that the Use and Occupancy Permit and the Building Permit previously issued by the Department of Permits and Safety be reinstated. Each party is to bear its own costs of this appeal.
Reversed.
STOULIG, J., concurring with written reasons.
STOULIG, Judge (concurring).
I find the result reached in this opinion to be most unsatisfactory. In fact it runs counter to the concepts of good zoning particularly as they relate to the ultimate elimination of the nonconforming status of property. However, I am constrained to agree with the conclusions herein expressed solely because the Comprehensive Zoning Ordinance (Ordinance 18,565 C.C. S., July 3, 1953, as amended) is inadequate *277 to cope with the factual situation presented in this case by its failure to provide some procedure or method whereby multiple nonconforming uses could be gradually eliminated without the necessity of taking property out of commerce. From the discussions had with my fellow judges on this panel they apparently entertain similar thoughts concerning this deficiency.
NOTES
[1] Now Article 12, Section 2, Ordinance 4264 M.C.S. adopted April 23, 1970, after the present suit was filed.